# UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF COLUMBIA

**J.B.**, a minor by and through her parent **ROBERT BELT**,

    Plaintiff,

v.

**DISTRICT OF COLUMBIA**,

    Defendant.

Case No. 17-cv-1298 (CRC)

## MEMORANDUM OPINION

Robert Belt thinks the District of Columbia Public School System ("DCPS") has sold his granddaughter J.B. short. In Belt's view, DCPS has not done enough to ensure that J.B.—who was diagnosed first with a learning disability and later an intellectual disability—makes appropriate academic progress at her public elementary school. Belt and J.B. (collectively, "plaintiffs") sought remedies through the proper administrative channels, but an administrative hearing officer denied their requests. Believing the hearing officer got it wrong, plaintiffs filed this federal lawsuit in June 2017. They claim that DCPS violated J.B.'s right to a "free appropriate public education" ("FAPE") under the Individuals with Disabilities Education Act ("IDEA"), 20 U.S.C. § 1400 *et seq.* Specifically, they allege that DCPS failed to develop an adequate Individualized Education Program ("IEP") for J.B. and failed to comply with the terms of the IEPs it did produce. To right these alleged wrongs, plaintiffs want DCPS to subsidize J.B.'s placement in a non-public school.

Plaintiffs moved for judgment on the pleadings and summary judgment; the District responded with its own motion for summary judgment. The Court referred the motions to Magistrate Judge G. Michael Harvey, who recommended that the Court deny Belt's motions and

grant the District's. Plaintiffs then filed objections to the recommendation, and the District responded to those objections. After a fresh review of the magistrate judge's work and plaintiffs' objections, the Court adopts the magistrate judge's recommendation and will grant summary judgment in the District's favor.

I. Background

A. Factual Background

Magistrate Judge Harvey's Report and Recommendation provides a comprehensive recitation of the facts, see Report and Recommendation ("R & R") at 2-21, so the Court will give only a brief summary.

When this case was filed in June 2017, J.B. was a 14-year-old eighth-grader at LaSalle Backus Elementary School in the District of Columbia. Compl. ¶ 1. She had been given her first IEP as a Specific Learning Disabled student in 2010. Administrative Record ("AR") Exh. 2 at 1. In 2013, J.B. was reevaluated and re-classified as intellectually deficient rather than learning-disabled. Id. A modified IEP followed in October 2014, and once annually over the next three years. Compl. ¶¶ 2, 4, 7, 15.

From the October 2014 IEP through January 2017, according to DCPS's own evaluations, J.B. made only limited—and in some categories, no—progress. See Compl. ¶ 19 (no change in performance in written expression and motor skills). J.B. stagnated in other areas from 2015 to 2017. Id. (no change in social/emotional development). And while J.B. improved in some competencies (like reading) from 2015 to 2017, the reading goals established for J.B. in her IEP stayed the same. Id.[1]

---

[1] The details of these IEPs, the meetings surrounding them, and documentation of J.B.'s academic progress are discussed more fully in the R & R. See R & R at 3-14.

Unhappy with the pace of J.B.'s progress, plaintiffs filed an administrative due process complaint with DCPS in January 2017. The complaint alleged that DCPS had denied J.B. a FAPE by failing to (1) include a special education teacher in J.B.'s IEP planning meetings; (2) develop an IEP in October 2016 and January 2017 that was reasonably calculated to provide educational benefits; (3) identify an appropriate location of services; and (4) implement J.B.'s IEPs effectively given that she had made minimal or no academic progress from October 2014 to January 2017. AR Exh. 1 at 4-5. For relief, plaintiffs sought funding to subsidize J.B.'s placement at a non-public school and enrollment in an extended-school-year program.

An administrative due process hearing took place in March 2017, at which plaintiffs presented four witnesses and the District another two. AR Exs. 3-6; R & R at 3. Shortly thereafter, the hearing officer determined that DCPS had fulfilled its obligation to provide J.B. with a FAPE and denied plaintiffs' requested relief. AR Exh. 1 at 14-15.

This lawsuit challenges that administrative determination. The plaintiffs moved for judgment on the pleadings and for summary judgment. The District opposed both motions and filed a cross-motion for summary judgment. The Court referred these motions to Magistrate Judge Harvey, who issued his R & R on May 5, 2018, recommending summary judgment in the District's favor. Plaintiffs timely filed their objections to the R & R, the District has responded, and the matter is now ripe for the Court's resolution.

## II. Legal Standards

### A. Judgment on the Pleadings

A party is entitled to judgment on the pleadings under Federal Rule of Civil Procedure 12(c) when "no material issue of fact remains to be solved, and the movant is clearly entitled to judgment as a matter of law." Montanans for Multiple Use v. Barbouletos, 542 F. Supp. 2d 9, 13

(D.D.C. 2008) (citations and alteration omitted). In considering a Rule 12(c) motion, "courts employ the same standard that governs a Rule 12(b)(6) motion to dismiss," McNamara v. Picken, 866 F. Supp. 2d 10, 14 (D.D.C. 2012), meaning it must accept a complaint's factual allegations as true but need not accept its legal conclusions, Bell Atl. Corp. v. Twombly, 550 U.S. 544, 555 (2007).

    B.  Summary Judgment

Summary judgment is appropriate if the record demonstrates that there is no genuine issue of material fact and that the moving party is entitled to judgment as a matter of law. Fed R. Civ. P. 56(c); Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986). In a case under the IDEA, where the Court reviews a hearing officer's determination, the relevant record is that developed in the administrative proceeding and any additional evidence introduced by the parties. 20 U.S.C. § 1415(i)(2)(C). So where, as here, no additional evidence has been introduced, a motion for summary judgment is in effect a motion for judgment based on the administrative record. District of Columbia v. Ramirez, 377 F. Supp. 2d 63, 67 (D.D.C. 2005).

In reviewing the administrative record, courts must give "due weight" to the hearing officer's determination. Bd. of Educ. of Hendrick Hudson Cent. Sch. Dist., Westchester Cty. v. Rowley, 458 U.S. 176, 206 (1982). Such deference is necessary because "courts lack the 'specialized knowledge and experience' necessary to resolve 'persistent and difficult questions of educational policy.'" Rowley, 458 U.S. at 208 (quoting San Antonio Ind. Sch. Dist. v. Rodriguez, 411 U.S. 1, 42 (1973)). In practice, that means courts should consider a hearing officer's factual findings "prima facie correct" and "may not substitute their own views for those of the hearing officer." Ramirez, 377 F. Supp. 2d at 67 (citations omitted). Moreover, a party challenging a hearing officer's determination bears the "burden of persuading the court [by a

4

preponderance of the evidence] that the hearing officer was wrong[.]" Reid ex rel. Reid v. District of Columbia, 401 F.3d 516, 521 (D.C. Cir. 2005) (citation omitted).[2]

    C. Review of Objections to the R & R

While the Court (and the magistrate judge) must accord "due weight" to the hearing officer's determination in the administrative proceeding, Rowley, 458 U.S. at 206, it reviews *de novo* any portion of the R & R to which a party properly objects, Fed. R. Civ. 72(b)(3); Aikens v. Shalala, 956 F. Supp. 14, 19 (D.D.C. 1997). After reviewing the record, objections, and any responses thereto, the Court may "accept, reject, or modify" the R & R's proposed disposition. Fed. R. Civ. P. 72(b)(3).

These interlocking legal standards amount to this: the Court will review with fresh eyes the portions of the R & R to which plaintiffs object, but in so doing, defer appropriately to the hearing officer's determination, just as the magistrate judge did.

**III. Analysis**

Plaintiffs raise nine objections to the magistrate judge's R & R.[3] Objection to Report and Recommendation ("Pls.' Objections") at 2. The Court takes them in the order plaintiffs present them.

---

[2] The D.C. Circuit has cautioned that, because the reviewing court can hear evidence not considered in the administrative proceeding, less deference ought to be accorded to IDEA determinations than is typical in other administrative contexts. See Reid, 401 F.3d at 521. But that caveat is less salient here since the record before the Court is identical to that before the hearing officer.

[3] Technically, they raise ten, but one is simply a point heading without argument, see Pls.' Objections at 20, and the Court will not address it.

A. The R & R Gives Inadequate Attention to J.B.'s Present Levels of Performance

Plaintiffs first object that the R & R paid too little attention to the IEPs' present-levels-of-performance sections, which are supposed to—but according to the plaintiffs, did not—document J.B.'s current achievement in various academic categories. Pls.' Objections at 17.

Plaintiffs' argument fails for two reasons. First, it is incorrect on the facts: as the magistrate judge documented, the IEPs do estimate J.B.'s current achievement and document her progress. To take just one example—one highlighted in the R & R—the January 2017 IEP noted that J.B. was "able to write and copy simple words and sentences with good letter to baseline alignment" and remarked that she "has improved since the previous years." AR Exh. 2 at 170; see R & R at 37 (discussing January 2017 IEP). Second, even assuming the IEPs were deficient in documenting J.B.'s present performance, plaintiffs must show that this procedural shortcoming led to some substantive denial in the form of a lower-quality education. Lesesne ex rel. B.F. v. District of Columbia, 447 F.3d 828, 834 (D.C. Cir. 2006) (collecting cases that stand for this proposition). Plaintiffs come up short in this regard. While they contend generally that an IEP cannot be tailored appropriately to the needs of the individual student without adequately documenting the student's current achievement levels, Pls.' Objections at 18, they do not show that any purported inattention to J.B.'s present performance led to J.B.'s halting academic progress. The Court therefore overrules plaintiffs' first objection.

B. The R & R Misapplies the Spoliation or "Missing-Evidence" Rule

Plaintiffs next complain that the R & R mistakenly rejected their "missing-evidence rule" argument. Pls.' Objections at 19-20. Plaintiffs assert that DCPS had control over additional evidence regarding J.B.'s academic progress (or lack thereof) but chose not to introduce it into the administrative record. Id. That obfuscation, plaintiffs contend, should compel the Court to

6

draw an adverse inference against the District. But for the same reasons the R & R rejected this argument—most importantly, that the District was under no obligation to provide the alleged missing evidence during the administrative hearing—the Court overrules plaintiffs' second objection. See R & R at 39-40.

      C. <u>The R & R Overlooks Defendant's Intentional and Deceptive Practices</u>

Plaintiffs allege that the District answered their complaint with bad-faith evasions. Pls.' Objections at 20. As with plaintiffs' spoliation argument, the Court cannot improve on the R & R's analysis of this claim. See R & R at 25. In short, even assuming that the District's answer were improperly evasive—a proposition for which the Court finds little evidence—the plaintiffs cannot show that any harm came of it. <u>G.G. ex rel. Gersten v. District of Columbia</u>, 924 F. Supp. 2d 273, 282 n.3 (D.D.C. 2013) (reasoning that because "the answer does not play a critical role in narrowing the issues" in cases based on a preexisting administrative record, plaintiffs are not prejudiced by inadequate answers). Plaintiffs' third objection is overruled.

      D. <u>The R & R Gives Insufficient Weight to Defendant's Failure to Provide Written Notice in January 2017</u>

Plaintiffs' fourth objection highlights yet another perceived procedural error. This time they take aim at the District's written notice of proposed changes to J.B.'s January 2017 IEP. Pls.' Objections at 21-22. Plaintiffs argue that the written notice failed to accurately depict and respond to Mr. Belt's concerns about J.B.'s education. <u>Id.</u> Here again, even assuming that the District mischaracterized Mr. Belt's concerns in the notice, plaintiffs still must show that somehow led to a substantive denial of a FAPE. R & R at 30. They cannot do so. Mischaracterizing Mr. Belt's own views in the notice of proposed changes in no way prevented Mr. Belt from participating in J.B.'s IEP meetings and having his concerns taken into

7

consideration. Id. The R & R properly rejected this argument, so the Court overrules plaintiffs' objection to that portion of the R & R.

E. The R & R Incorrectly Assesses Mr. Belt's Ability to Participate in the IEP Process

Plaintiffs' fifth objection is a variation on the fourth. They argue that Mr. Belt was denied the opportunity to adequately participate in the decision-making process regarding J.B.'s education, and that this led to J.B. being denied a FAPE. Pls.' Objections at 22-23. Plaintiffs' best evidence is Mr. Belt's absence from the October 2016 IEP meeting. Yet here, too, the R & R correctly rejected plaintiffs' argument. See R & R at 27-28. As the R & R notes, because Mr. Belt was absent at the October 2016 meeting, the school continued to operate on the then-current IEP and did not make any substantial changes until the January 2017 IEP meeting, at which Mr. Belt was present and participative. AR Exh. 2 at 70, 87; id. Exh. 3 at 1 (Mr. Belt convincing school to continue speech-language therapy despite a speech pathologist's disagreement). Mr. Belt's isolated October 2016 absence therefore did not seriously impede his participation in the IEP process. Johnson v. District of Columbia, 873 F. Supp. 2d 382, 386 (D.D.C. 2012) (holding the same when parent did not attend one meeting but participated in next meeting). Plaintiffs' fifth objection is overruled.

F. The R & R Incorrectly Concludes that DCPS Employee Shante Freeman did not Withhold Data Regarding J.B.'s Performance

Plaintiffs maintain in their sixth objection that Ms. Freeman's testimony at the administrative hearing discussed performance data that was not included in J.B.'s IEP or discussed at IEP meetings. Pls.' Objections at 24. This, plaintiffs say, demonstrates that Mr. Belt was not given all the information necessary to adequately participate in the IEP process. Id. The R & R, however, concluded that the factual record contradicted plaintiffs' argument. R & R at 31. The Court's fresh review of the record confirms the R & R's conclusion: Ms. Freeman

testified that she gave Mr. Belt "copies of all of [J.B.'s] evaluations and reports," AR Exh. 5 at 97, a contact log corroborates that testimony, AR Exh. 2 at 67, and plaintiffs offer only their unsupported allegation to the contrary to rebut this statement. Accordingly, plaintiffs' sixth objection is overruled.

      G. <u>The R & R Gives Insufficient Weight to the Fact that the IEPs from 2014 to 2017 did not Change Significantly</u>

Plaintiffs next contend that the R & R should have been more troubled by the substantial similarity between J.B.'s 2017 IEP and her 2014 IEP. Pls.' Objections at 24-25. Precisely what weight the R & R *should* have given this observation, plaintiffs do not say. But the Court acknowledges the intuition behind plaintiffs' argument: if DCPS truly were crafting effective IEPs for J.B., and if it were indeed providing J.B. with a FAPE, one would expect the 2017 IEP to look meaningfully different from the 2014 iteration. With time comes progress, one hopes, and that progress should manifest itself in evolving IEPs.

    Even so, the R & R thoughtfully accounted for the slight changes over J.B.'s four IEPs. The R & R noted, for example, that while "J.B.'s goals and objectives have stayed fairly consistent over the course of the relevant period," her goals were modified once she had made documented progress in certain areas. AR Exh. 2 at 80. In addition, the R & R emphasized that there is no freestanding rule that IEPs evolve in any particular manner; rather, each individual IEP should be judged by whether it is "reasonably calculated to enable a child to make progress in light of the child's particular circumstances." R & R at 42 (citing <u>Endrew F v. Douglas Cty. Sch. Dist.</u>, 137 S. Ct. 988, 999-1001 (2018)). J.B.'s particular circumstances, the R & R found, made for slower progress; that slower progress, in turn, meant the IEPs did not much change. <u>Id.</u> at 42-43. That does not mean, however, as both the hearing officer and the R & R concluded,

9

that each IEP functionally denied J.B. a FAPE. The Court thus overrules plaintiffs' seventh objection.

### H. The R & R Gives Insufficient Weight to J.B.'s Limited Academic Progress and Misapplies the Supreme Court's Endrew F. decision

Plaintiffs' eighth objection that the R & R should have ascribed more import to J.B.'s limited progress is bound up with their ninth objection that the R & R misapplied the Supreme Court's decision in Endrew F., 137 S. Ct. at 999-1001. The Court therefore takes them together.

First things first: all agree that J.B. made only limited academic progress. Pls.' Objections at 25; Defendants' Response at 14 (discussing witness testimony at the administrative hearing that J.B.'s progress was "very slight"). The disagreement is what to make of that unfortunate reality. Plaintiffs appear to believe that fact alone establishes that J.B. was denied a FAPE, especially in light of Endrew F. Pls.' Objections at 26. The R & R concluded otherwise, R & R at 40-43, and the Court agrees. In short, limited academic progress does not *ipso facto* signal a violation of the IDEA any more so than does the existence of substantially similar IEPs year over year. Magistrate Judge Harvey amply addressed plaintiffs' Endrew F. argument; the Court offers only this brief postscript.

It is important to clarify what the Supreme Court's decision in Endrew F. did and did *not* do. In Endrew, the Court rejected the Tenth Circuit's rule that "a child's IEP is adequate so long as it is calculated to confer an 'educational benefit [that is] merely . . . more than *de minimis*.'" Endrew F., 137 S. Ct. at 997 (alteration in original) (citation omitted). Because that was an improper interpretation of the Supreme Court's decision in Rowley, the Court vacated the Tenth Circuit's decision and remanded the case for consideration of its facts under the correct legal standard: "To meet its substantive obligation under the IDEA, a school must offer an IEP

reasonably calculated to enable a child to make progress appropriate in light of the child's circumstances." Endrew F., 137 S. Ct. at 999.

Now what Endrew F. did not do. It did *not* hold that any time a child makes limited, or even zero, progress, that a school system has necessarily failed to provide a FAPE and violated the IDEA. Endrew F. may have held that a school system cannot satisfy its statutory obligation *merely* by pointing to something beyond *de minimis* progress; but it did not say that the presence of only *de minimis* progress (or even less than that) equates to an IDEA violation. So while Endrew F. clarified the appropriate legal standard for a challenge like this one, it certainly does not stand for the proposition that any time a child makes negligible (or uneven) academic progress, the school system has violated the IDEA. Indeed, on remand, the Tenth Circuit could reach the same result—rejecting the student's IDEA challenge—that it did the first time around, so long as it does so under the correct legal rubric.

Here, though, both the hearing officer and the R & R applied the correct test. Both asked, as Endrew F. mandates, whether J.B.'s IEPs were "reasonably calculated to enable a child to make progress appropriate in light of the child's circumstances." 137 S. Ct. at 1001; see AR Exh. 1 at 11; R & R at 43 (both discussing Endrew F.). J.B.'s unique circumstances, the hearing officer and the R & R found, helped explain her modest progress and the slowly evolving IEPs. See AR Exh. 1 at 14; R & R at 42-43. And plaintiffs have not carried their burden of showing that the hearing officer got it "wrong." Reid, 401 F.3d at 521. While plaintiffs point to testimony at the administrative hearing that lamented J.B.'s pace-of-progress, AR Exh. 4 at 37-39, 79, the hearing officer also had to consider testimony that J.B. "is wired in such a way that it is going to take her a tremendous amount of time . . . to grow and change," id. Exh. 6 at 21-22. Moreover, and in spite of that, the administrative record shows that J.B. *did* make some

reasonably calculated to enable a child to make progress appropriate in light of the child's circumstances." Endrew F., 137 S. Ct. at 999.

Now what Endrew F. did not do. It did *not* hold that any time a child makes limited, or even zero, progress, that a school system has necessarily failed to provide a FAPE and violated the IDEA. Endrew F. may have held that a school system cannot satisfy its statutory obligation *merely* by pointing to something beyond *de minimis* progress; but it did not say that the presence of only *de minimis* progress (or even less than that) equates to an IDEA violation. So while Endrew F. clarified the appropriate legal standard for a challenge like this one, it certainly does not stand for the proposition that any time a child makes negligible (or uneven) academic progress, the school system has violated the IDEA. Indeed, on remand, the Tenth Circuit could reach the same result—rejecting the student's IDEA challenge—that it did the first time around, so long as it does so under the correct legal rubric.

Here, though, both the hearing officer and the R & R applied the correct test. Both asked, as Endrew F. mandates, whether J.B.'s IEPs were "reasonably calculated to enable a child to make progress appropriate in light of the child's circumstances." 137 S. Ct. at 1001; see AR Exh. 1 at 11; R & R at 43 (both discussing Endrew F.). J.B.'s unique circumstances, the hearing officer and the R & R found, helped explain her modest progress and the slowly evolving IEPs. See AR Exh. 1 at 14; R & R at 42-43. And plaintiffs have not carried their burden of showing that the hearing officer got it "wrong." Reid, 401 F.3d at 521. While plaintiffs point to testimony at the administrative hearing that lamented J.B.'s pace-of-progress, AR Exh. 4 at 37-39, 79, the hearing officer also had to consider testimony that J.B. "is wired in such a way that it is going to take her a tremendous amount of time . . . to grow and change," id. Exh. 6 at 21-22. Moreover, and in spite of that, the administrative record shows that J.B. *did* make some

progress—in reading, in speech and language, and in motor skills development. AR Exh. 2, 75-84. In short, the record as a whole provides ample support for the hearing officer's determination that J.B.'s IEPs were "reasonably calculated to enable a child to make progress appropriate in light of the child's circumstances." Endrew F., 137 S. Ct. at 1001. Because that is all that Endrew F. requires, the R & R did not err in reaching the same conclusion. Plaintiffs' final two objections are therefore overruled.

## IV. Conclusion

For the foregoing reasons, the Court will adopt Magistrate Judge Harvey's Report and Recommendation in full and will grant the District's motion for summary judgment. A separate Order shall accompany this memorandum opinion.

CHRISTOPHER R. COOPER
United States District Judge

Date: September 6, 2018